## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BERG, On Behalf of Himself and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>WEBMD HEALTH CORP., MARTIN J. WYGOD, STEVEN L. ZATZ, MARK J. ADLER, IAN G. BANWELL, NEIL F. DIMICK, JAMES V. MANNING, WILLIAM J. MARINO, JOSEPH E. SMITH, STANLEY S. TROTMAN, JR., KRISTIINA VUORI, MH SUB I, LLC, and DIAGNOSIS MERGER SUB, INC., )<br><br>Defendants. ) | Case No. _____<br><br>CLASS ACTION<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on July 24, 2017 (the "Proposed Transaction"), pursuant to which WebMD Health Corp. ("WebMD" or the "Company") will be acquired by MH Sub I, LLC ("Parent") and its wholly-owned subsidiary, Diagnosis Merger Sub, Inc. ("Merger Sub"), which are affiliates of Kohlberg Kravis Roberts & Co. L.P. (collectively, "KKR").

2.      On July 24, 2017, WebMD's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub.  Pursuant to the terms of the Merger Agreement,

Merger Sub launched a tender offer (the "Tender Offer") to acquire all of the Company's common stock for $66.50 per share in cash. The Tender Offer is scheduled to expire on September 7, 2017. Following the consummation of the Tender Offer and the satisfaction or waiver of certain conditions, Merger Sub will be merged with and into the Company (the "Merger"), and the Company will be the surviving corporation.

3.    On August 7, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.    The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.    This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of WebMD common stock.

9.      Defendant WebMD is a Delaware corporation and maintains its principal executive offices at 395 Hudson Street, New York, New York 10014.  WebMD's common stock is traded on the NasdaqGS under the ticker symbol "WBMD."

10.     Defendant Martin J. Wygod ("Wygod") is a director of WebMD and has served as Chairman of the Board since May 2005.

11.     Defendant Steven L. Zatz, M.D. ("Zatz") has served as a director since November 2016 and as Chief Executive Officer ("CEO") of WebMD since September 2016.

12.     Defendant Mark J. Adler, M.D. ("Adler") has served as a director of WebMD since September 2005.

13.     Defendant Ian G. Banwell ("Banwell") has served as a director of WebMD since January 2017.

14.     Defendant Neil F. Dimick ("Dimick") has served as a director of WebMD since September 2005.

15.     Defendant James V. Manning ("Manning") has served as a director of WebMD since September 2005.

16.     Defendant William J. Marino ("Marino") has served as a director of WebMD since April 2014.

17.     Defendant Joseph E. Smith ("Smith") has served as a director of WebMD since October 2009.

18.     Defendant Stanley S. Trotman, Jr. ("Trotman") has served as a director of

WebMD since September 2005.

19.    Defendant Kristiina Vuori, M.D., Ph.D. ("Vuori") has served as a director of WebMD since July 2014.

20.    The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.    Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

22.    Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of WebMD (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.    This action is properly maintainable as a class action.

25.    The Class is so numerous that joinder of all members is impracticable.  As of August 4, 2017, there were 37,303,875 shares of WebMD common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.    Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the

other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company*

30.    WebMD was formed in 2005 and completed its initial public offering on September 28, 2005.  WebMD is the leading provider of health information services, serving consumers, physicians, healthcare professionals, employers, and health plans through its public and private online portals, mobile platforms, and health-focused publications.

31.    The Company generates revenue from the advertising and sponsorship services of The WebMD Health Network and related operations, from the services it markets to employers and health plans under the WebMD Health Services brand, and from certain information services.

32.    The    WebMD    Health    Network    includes    WebMD.com,    Medscape.com,

MedicineNet.com, eMedicineHealth.com, RxList.com, OnHealth.com, Medscape Education (Medscape.org) and other WebMD owned sites and apps.  Under the WebMD Health Services brand, the Company markets wellness services and solutions that help employers and health plans improve the health of their employee and plan participant populations.  These services help the Company's clients' employees and plan participants make informed decisions about health risks and lifestyle choices.  WebMD also generates revenue from the sale of certain information products and services on a stand-alone basis using de-identified data that it licenses from a small number of third-party data sources, of which the principal source is a license retained by HLTH Corporation ("HLTH"), the Company's former parent company, in connection with the sale of its Emdeon Business Services business.

33.    On July 24, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which WebMD will be acquired by KKR.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

34.    Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

35.    The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

36.    *First*, the Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan").  The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37.    For example, the Solicitation Statement indicates that, when performing its Discounted Cash Flow Analysis, "J.P. Morgan calculated the present value of unlevered free cash flows that WebMD is expected to generate: (i) during the remainder of 2017 (applying a valuation date as of June 30, 2017) by calculating unlevered free cash flows for the remainder of 2017 by subtracting actual unlevered free cash flows as of the first half of 2017 from the applicable 2017E unlevered free cash flow based upon Management Forecasts, (ii) for calendar years 2018 through 2021 based upon Management Forecasts and (iii) for calendar years 2022 through 2026 based upon extrapolations of the Management Forecasts that were prepared by J.P. Morgan with the consent of WebMD and which were used by J.P. Morgan in connection with its financial analyses and in rendering its fairness opinion."  The Solicitation Statement, however, only discloses the Company's unlevered free cash flows for years 2017 through 2021.  The Solicitation Statement therefore fails to, but must, disclose the Company's unlevered free cash flows for years 2022 through 2026, as well as the line items used to calculate those unlevered free cash flows.

38.    In addition, the Solicitation Statement provides projections for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA and Unlevered Free Cash Flow, but it fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.  To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must

provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP.

39.     With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the Company's unlevered free cash flows for years 2022 through 2026; (ii) the inputs and assumptions underlying the discount rate range of 8.0% to 10.0%; (iii) J.P. Morgan's basis for using an perpetuity growth rate range of 2.0% to 3.0%; (iv) the exit multiples implied from the analysis; and (v) the value of additional tax savings from the usage of net operating losses and research and development credit carry forwards of WebMD for the projected period used by J.P. Morgan in its analysis.

40.     With respect to J.P. Morgan's Public Trading Multiples analysis, the Solicitation Statement fails to disclose any of the multiples or financial metrics of the companies observed by J.P. Morgan in its analysis.  To provide stockholders with the requisite fair summary of this analysis, the Solicitation Statement must disclose the individual multiples and financial metrics for each of the selected companies.

41.     Similarly, with respect to J.P. Morgan's Selected Transaction Analysis, the Solicitation Statement fails to, but must, disclose the individual multiples and financial metrics for each of the transactions observed by J.P. Morgan in its analysis.

42.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) "Financial Analyses and Opinion;" and (ii) "Company Management Forecasts."

43.     *Second*, the Solicitation Statement omits material information regarding potential conflicts of interest of the Company's officers.

44.     For example, the Solicitation Statement states that, "[p]ursuant to the Merger

8

Agreement, the officers of WebMD immediately prior to the Effective Time will be the initial officers of the Surviving Company until their respective successors are duly elected or appointed and qualified or until the earlier of their death, resignation or removal in accordance with the certificate of incorporation and by-laws of the Surviving Company." The Solicitation Statement, however, fails to disclose the timing and nature of all communications regarding the future employment and of WebMD's officers, including who participated in all such communications.

45.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.    The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) "Background of the Merger; Reasons for Recommendation;" and (ii) "Financial Analyses and Opinion."

47.    *Third*, the Solicitation Statement omits material information regarding potential conflicts of interest of J.P. Morgan. The full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48.    The Solicitation Statement states that:

During the two years preceding the date of J.P. Morgan's opinion, J.P. Morgan and its affiliates have had commercial or investment banking relationships with affiliates of Parent and with portfolio companies of KKR that are unrelated to the Offer and Merger, for which J.P. Morgan and such affiliates have received customary compensation. Such services during such period have included debt syndication, equity and debt underwriting and financial advisory services for such

portfolio companies. In addition, J.P. Morgan's commercial banking affiliate is an agent bank and a lender under outstanding credit facilities of affiliates of Parent and such portfolio companies, for which it receives customary compensation or other financial benefits.

49.    The Solicitation Statement fails to quantify the amount of "customary compensation or other financial benefits" that J.P. Morgan received for these services to affiliates of KKR and Parent.

50.    The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: (i) "Background of the Merger; Reasons for Recommendation;" and (ii) "Arrangements with Parent, Purchaser and their Affiliates."

51.    *Fourth*, the Solicitation Statement omits material information relating the background leading to the Proposed Transaction.

52.    The Solicitation Statement indicates that, "[t]hroughout April and May of 2017, a total of 39 parties signed confidentiality agreements with the Company, including 19 strategic parties and 20 financial sponsors, including KKR." The Solicitation Statement, however, fails to disclose whether any of those confidentiality agreements contained standstill and/or "don't ask, don't waive" provisions that are preventing those counterparties from submitting topping bids to acquire the Company or requesting a waiver of standstill provisions. Notably, it is likely that such preclusive "don't ask, don't waive" provisions do exist, because the confidentiality agreement entered into with KKR, which was attached as Exhibit (D)(2) to the Schedule TO Tender Offer Statement, contains such a provision.

53.    In addition, the Solicitation Statement indicates that, late into the process, Individual Defendant Zatz recused himself from certain meetings and did not participate in the Board vote on the Proposed Transaction, but it fails to disclose the reason Zatz recused himself,

including whether his recusal was due to the existence of a potential conflict of interest.

54.     The omission of this material information renders the "Background of the Merger; Reasons for Recommendation" section of the Solicitation Statement false and misleading.

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to WebMD's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

58.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

59.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

60.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

61.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

62.     The omissions in the Solicitation Statement are material in that a reasonable

shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

63.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

64.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

65.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

66.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

67.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

69.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

70.    The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

71.    Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

72.    The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

73.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants, Parent, and Merger Sub)

74.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.    The Individual Defendants, Parent, and Merger Sub acted as controlling persons of WebMD within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of WebMD and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

76.    Each of the Individual Defendants, Parent, and Merger Sub was provided with or

had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

78.     Parent and Merger Sub also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

79.     By virtue of the foregoing, the Individual Defendants, Parent, and Merger Sub violated Section 20(a) of the 1934 Act.

80.     As set forth above, the Individual Defendants, Parent, and Merger Sub had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

81.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

82.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.      Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  August 11, 2017                    **RIGRODSKY & LONG, P.A.**

                                    By:   */s/ Timothy J. MacFall*
                                          Timothy J. MacFall
                                          825 East Gate Boulevard, Suite 300
                                          Garden City, NY 11530
                                          (516) 683-3516

**OF COUNSEL:**                            Brian D. Long
                                          Gina M. Serra
**RM LAW, P.C.**                           2 Righter Parkway, Suite 120
Richard A. Maniskas                        Wilmington, DE 19803
1055 Westlakes Drive, Suite 300            (302) 295-5310
Berwyn, PA 19312
(484) 324-6800                             *Attorneys for Plaintiff*